IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA HANSEN, | ) |
|     Plaintiff and Counterclaim Defendant, | ) |
| v. | ) |
| GMB TRANSPORT, INC., | ) Case No. 24-cv-00255-SH |
|     Defendant and Counterclaimant, | ) |
| and | ) |
| UNITED SPECIALTY INSURANCE COMPANY and GURPREET SINGH, | ) |
|     Defendants.[1] | ) |

**OPINION AND ORDER**

Before the Court is Defendant United Specialty Insurance Company's motion to dismiss under Fed. R. Civ. P. 12(b)(6).[2] For reasons explained below, the Court grants the motion and dismisses Plaintiff's claims without prejudice.

**Factual Background**

Taking the factual allegations in the petition (ECF No. 2-1) as true and viewing them in the light most favorable to the nonmoving party, Plaintiff alleges as follows:

In October 2021, Plaintiff Pamela Hansen ("Hansen") was driving on the Will Rogers Turnpike (I-44) in Rogers County, Oklahoma, when she exited the highway, parked on the shoulder, and began moving forward on the shoulder with her flashers on.

---

[1] There is no need to continue numbering parties in the caption. This is required only in "the initiating document." LCvR 3-1(d).

[2] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 30.)

1

(*Id.* at 1[3] ¶ 1 & 2 ¶¶ 9–10.)  Defendant Gurpreet Singh ("Singh") was operating a tractor-trailer and hit Hansen's vehicle from behind, causing damage to the vehicle and injuries to Hansen.  (*Id.* at 2 ¶¶ 8, 11–12.)  At the time, Singh was an employee and/or agent of Defendant GMB Transport, Inc. ("GMB"), which is headquartered in California.  (*Id.* at 1 ¶ 4 & 3 ¶ 16.)  USIC provided a liability insurance policy to both GMB and Singh, which was in effect on the date of the crash and covers the claims in this case.  (*Id.* at 2 ¶ 6 & 6 ¶ 3.)

The Petition also contains the following legal conclusions:  (1) USIC is subject to direct action as the insurer of GMB pursuant to Okla. Stat. tit. 47, § 230.28; (2) USIC and GMB are subject to the filing requirements of that statute; and (3) USIC is responsible for any judgment rendered against GMB or Singh.  (*Id.* at 6 ¶ 2 & 7 ¶¶ 4–5.)

## Procedural Background

Hansen brought this lawsuit on October 20, 2023, asserting negligence and negligence *per se* against Singh; asserting GMB is vicariously liable under respondeat superior; and asserting GMB is directly liable for the negligent hiring, training, and supervision of Singh.  (*Id.* at 3–6.)  Hansen also asserts a "direct action" against USIC under Okla. Stat. tit. 47, § 230.28.  (*Id.* at 6–7.)  USIC now moves to dismiss, arguing Hansen's petition fails to state a claim upon which relief can be granted.  (ECF No. 7.)

## Analysis

### I. Standard of Review—Federal Law

To survive a Rule 12(b)(6) motion, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'"  *Brokers' Choice of Am.,*

---

[3] Page numbers refer to those in the court-provided header.

*Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All such reasonable inferences are resolved in the plaintiff's favor. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnotes omitted). A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions" or a "formulaic recitation" of the elements. *Id.* at 555.

Here, the Court rejects any argument by Hansen that Oklahoma's state-court pleading requirements are applicable. (*See* ECF No. 15 at 7–8.) "Both the Federal Rules of Civil Procedure and numerous decisions in the Tenth Circuit make clear that federal procedural law governs an action once it is removed to federal court." *Thomas v. Farmers Ins. Co.*, No. 16-CV-17-TCK-PJC, 2016 WL 5794760, at *2 (N.D. Okla. Oct. 4, 2016) (collecting cases); *see also* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court"). This includes federal pleading rules. *See Leiser v. Moore*, 903 F.3d 1137, 1139 n.1 (10th Cir. 2018) (rejecting plaintiff's argument that the district court should have used the state pleading standard in removed case).

II. **Direct Action Against Insurers—Oklahoma Law**

As this matter is before the Court based on diversity jurisdiction, the undersigned applies Oklahoma state law in determining the parties' substantive rights. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Oklahoma has never "recognized the right of a plaintiff to bring a *direct* action against the insurer of an alleged tortfeasor absent statutory edict." *Daigle v. Hamilton*, 1989 OK 137, ¶ 18, 782 P.2d 1379, 1383; *see also Cassady v. CRST Malone, Inc.*, No. 16-CV-621-TCK-FHM, 2017 WL 2177344, at *2 (N.D. Okla. May 17, 2017) ("Under Oklahoma law, a defendant's liability insurer generally cannot be sued directly." (citing *Daigle*)).

As it relates to motor carriers, there are two such potential statutory edicts—Okla. Stat. tit. 47, § 169 and § 230.30. *See O'Dell v. Baker*, No. CIV-22-147-RAW-GLJ, 2022 WL 18674828, at *1 (E.D. Okla. Nov. 9, 2022). Plaintiff has pled no facts implicating either statute.

### A. Section 169

First, Hansen makes no substantive argument that section 169 applies in this case and has pled no facts supporting such a claim. Section 169 requires motor carriers of household goods to file with the Oklahoma Corporation Commission ("OCC") a liability insurance policy or bond that binds the obligor to make compensation for personal injuries or property damage resulting from the operation of the motor carrier, and for which the carrier is legally liable.[4] Okla. Stat. tit. 47, § 169(A). This statute applies only to carriers of "household goods and used emigrant movables or other <u>intrastate</u> motor carriers . . . ." *Fierro v. Lincoln Gen. Ins. Co.*, 2009 OK CIV APP 62, ¶ 6, 217 P.3d 158, 160 (emphasis added).

---

[4] Section 169 further provides, "<u>After judgment against the carrier for any damage</u>, the injured party may maintain an action upon the policy or bond to recover the same, and shall be a proper party to maintain such action." Okla. Stat. tit. 47, § 169(A) (emphasis added). Despite the "after judgment" language, Oklahoma has long recognized that "joint actions" against both the carrier and the insurer are allowed by this section. *See Daigle*, ¶ 8, 782 P.2d at 1381 (citing *Enders v. Longmire*, 1937 OK 154, 67 P.2d 12, 14).

Hansen alleges neither that GMB is an intrastate motor carrier nor that it is a carrier of household goods. Section 169, therefore, does not apply.[5]

### B. Section 230.30 of the Motor Carrier Act

Second, Hansen similarly fails to plead any facts supporting a claim under section 230.30. Section 230.30 is part of the Motor Carrier Act of 1995, Okla. Stat. tit. 47, §§ 230.21–33. With certain exceptions, the Motor Carrier Act applies to the transportation of passengers or property by motor carriers and private carriers over Oklahoma public highways. Okla. Stat. tit. 47, § 230.22(C). A motor carrier generally means "any person . . . operating upon any public highway for the transportation of passengers or property for compensation or for hire or for commercial purposes, and not operating exclusively" within city limits. *Id.* § 230.23(6). Like section 169, the Motor Carrier Act requires the carrier to file with the OCC a liability insurance policy or bond binding the obligor to make compensation for personal injuries and property damage that results from the operation of a carrier and for which that carrier is legally liable.[6] *Id.* § 230.30(A).

The cases applying section 230.30 all agree—to state a claim against an insurer under that section, the plaintiff must allege the "motor carrier was required to be and was

---

[5] USIC also argues that Okla. Stat. tit. 47, § 169.1, provides no basis for direct liability. (ECF No. 7 at 3–4.) Hansen does not dispute this argument, and the Court considers it no further.

[6] Section 230.30(A) similarly states that the injured party may maintain an action on the policy or bond "after judgment against the carrier for any damage." Even so, at least one Oklahoma court has found that, like section 169, this statute authorizes a joint action against the carrier and its insurer. *See Alfalfa Elec. Coop., Inc. v. Mid-Continent Cas. Co.*, 2015 OK CIV APP 53, ¶ 18, 350 P.3d 1276, 1282. Another court, however, has read this language as requiring judgment against the carrier before suit is filed against the insurer. *See Fierro*, ¶¶ 7–8, 217 P.3d at 160–61; *but see id.* at 161 (Adams, J., concurring in result) (arguing *Enders* requires section 230.30 to be read consistently with section 169).

in fact insured pursuant to § 230.30." *Mize v. Liberty Mut. Ins. Co.*, 393 F. Supp. 2d 1223, 1226 (W.D. Okla. 2005)[7]; *see also Simpson v. Litt*, No. CIV-17-339-R, 2017 WL 2271484, at *3 (W.D. Okla. May 23, 2017) ("federal courts have been unanimous in holding that the insurance companies for interstate carriers who have not filed proof of insurance in Oklahoma may not be named as joint defendants"). That is, the plaintiff must allege the motor carrier was licensed with the OCC. *Bales v. Green*, No. 19-CV-00154-GKF-JFJ, 2019 WL 13197798, at *2 (N.D. Okla. May 13, 2019) (collecting cases). Put another way, the motor carrier must have "registered and filed a certificate of insurance with the" OCC pursuant to section 230.30. *O'Dell*, 2022 WL 18674828, at *1. This is because "only those policies or bonds that the statute itself requires to be filed with and approved by the [OCC] prior to the issuance of a motor carrier's license . . . create a direct cause of action against the insurer who issued the policy or bond." *Lamb v. The Scotts Miracle-Gro Co.*, No. 06 CV 32 KJP, 2007 WL 1959289, at *4 (E.D. Okla. July 2, 2007); *see also Fierro,* 217 P.3d at 161 (Adams, J., concurring) (noting that the provisions of section 230.30 "apply only to those motor carriers required to obtain a license from the [OCC]" and that section 230.30 does not apply to motor carriers who are "properly registered in another state under the single state registration provisions"). "If a motor vehicle carrier has not filed a policy . . . with the OCC in accordance with section 230.30, then the injured party cannot bring a direct cause of action against the motor vehicle carrier's insurer."

---

[7] The undersigned does not endorse the *Mize* court's finding of an "implied" allegation that the defendant in that case was subject to section 230.30, nor does the Court adopt *Mize's* statement of the elements of a section 230.30 claim. *See Mize*, 393 F. Supp. 2d at 1226. It is enough for today's purposes that *Mize*, along with the other courts to address the issue, have all found that a motor carrier must be subject to section 230.30's filing requirement before being subject to its direct liability.

6

*Hobbs v. Rui Zhao*, No. 13-CV-0673-CVE-FHM, 2014 WL 3898408, at *3 (N.D. Okla. Aug. 11, 2014).

In her petition, Hansen appears to be attempting to state a direct cause of action under section 230.30 through her invocation of section 230.28. (ECF No. 2-1 at 6–7.) Hansen emphasizes that section 230.28(A) makes it unlawful for "any motor carrier" to operate in Oklahoma without first obtaining from the OCC "a license stating that all insurance requirements have been met," among other things. (ECF No. 15 at 5.) She then makes the logical leap that all such motor carriers "must" file a policy with the OCC under section 230.30(A). (*Id.*) But this leap is not supported by law.

The interstate carriers who pass through Oklahoma are not all required to have a license issued from the OCC or to file a policy with the Commission. This is fatal to a claim under section 230.30. In *Fierro*, the Oklahoma Court of Civil Appeals held that Oklahoma's participation in a single state registration system for interstate motor carriers—"where interstate motor carriers register and insure in their home states"—prohibited direct action against the carrier's insurer under section 230.30. *Fierro*, ¶¶ 1, 7, 217 P.3d at 159–61. Oklahoma now participates in the Unified Carrier Registration ("UCR") system, which "evolved from, replaced, and serves effectively the same purpose as the now-defunct Single State Registration System." *Harness v. TWG Transp., Inc.*, No. CIV-18-462-D, 2018 WL 3318955, at *2 n.1 (W.D. Okla. July 5, 2018) (citing 49 U.S.C. § 13908(a)); *see also* Okla. Stat. tit. 47, § 162.1. Under the UCR, "a for-hire motor carrier engaged in interstate commerce that complies with the Federal Motor Carrier Safety Regulations and registers its liability insurance policy or bond in its base state need not register in any other state participating in the UCR agreement." *Beebe v. Flores*, No. CIV-11-1381-HE, 2012 WL 137780, at *1 n.1 (W.D. Okla. Jan. 18, 2012). As such, a

7

> motor carrier with a principal place of business other than Oklahoma may: (1) conduct intrastate commerce in Oklahoma, so long as it has an Oklahoma license (which requires filing a copy of its liability insurance policy with the OCC), [or] (2) conduct interstate commerce in Oklahoma pursuant to the UCRS, so long as it has (a) registered and paid fees in its home state, (b) filed a Form E Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance ("Form E") with the OCC, and (c) such insurer is approved by its home state's insurance regulatory agency or the Oklahoma Insurance Department.

*Sallee v. L.B. White Trucking, Inc.*, No. 11-CV-212-TCK-PJC, 2012 WL 314237, at *5 (N.D. Okla. Feb. 1, 2012). Therefore, whether a carrier has registered under the UCR system in its home state or obtained a license and filed a policy with the OCC is critical to the issue of direct liability.[8] *See O'Dell*, 2022 WL 18674828, at *2 ("Since *Fierro*, Oklahoma Federal courts have unanimously held that insurance companies for interstate carriers who have not filed proof of insurance with the Oklahoma Corporation Commission cannot be named as joint defendants." (collecting cases)); *Hobbs*, 2014 WL 3898408, at *4 ("merely submitting a home state's insurance policy as part of the UCR . . . is insufficient to allow a direct cause of action under section 230.30"); *Thurmond v. CRST Expedited, Inc.*, No. CIV-18-1142-R, 2019 WL 362275, at *2 (W.D. Okla. Jan. 29, 2019) ("[p]articipation in the UCR, however, does not meet the dictates of § 230.30, which applies to certificates of insurance filed with and licenses issued by the" OCC).

---

[8] Hansen appears to argue, in passing, that this longstanding interpretation of section 230.30 raises concerns of equal protection under the U.S. Constitution and domestic/foreign corporation concerns under the Oklahoma Constitution. (ECF No. 15 at 5–6.) Other than citing the general constitutional principles, Hansen does not develop this argument, and the Court need not consider it. *See Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999) (declining to "consider unsupported and undeveloped issues"). In any event, the statutory scheme merely classifies motor carrier insurers by home state and requires each of them to comply with that home state's law. *See Harness*, 2018 WL 3318955, at *3. Hansen suffers no detriment from that classification, being able to seek redress from the insurer—if necessary—after any judgment against the insured. *Fierro*, ¶ 8, 217 P.3d at 161.

### C. Plaintiff's Allegations

Applying the law above, Hansen offers no factual allegations setting forth a plausible claim under sections 169 or 230.30. There are no allegations indicating GMB would be the sort of motor carrier required to file its insurance policy under either section, and there are no allegations that such a policy issued by USIC was actually filed. As such, Hansen has failed to state a claim against USIC upon which relief can be granted.

## III. Stay Pending Discovery

Hansen asks, in her response brief, that the Court stay any ruling on the motion to dismiss to allow her to conduct discovery into facts that would support a claim against USIC. (ECF No. 15 at 8-9.) Hansen offers no law in support of the argument that discovery may proceed on an unstated claim, nor is federal discovery law so broad.

In pleading a claim in federal court, the plaintiff must include a short and plain statement of the claim showing she is entitled to relief. Fed. R. Civ. P. 8(a)(2). This statement must have evidentiary support or a belief (formed after a reasonable inquiry) that such support is forthcoming. *See* Fed. R. Civ. P. 11(b)(3) (by signing pleading, attorney represents "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). Once a claim is filed in good faith and the parties have held their initial conference, the parties may commence discovery—absent a local rule or court order otherwise. *See* Fed. R. Civ. P. 26(d)(1). This discovery, however, is limited to matters relevant to a "party's claim or defense" and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Some states have rules that allow for discovery to investigate <u>potential</u> claims. *See, e.g.*, Tex. R. Civ. P. 202.1, *et seq.* (setting forth process by which person may petition a

court for an order authorizing deposition or written questions to investigate potential claim or suit). The federal rules do not have a similar mechanism. Under the federal rules, discovery must be relevant to an existing claim or defense, even if such discovery might someday support an amendment to the pleadings. *See* Fed. R. Civ. P. 26, advisory ctte.'s note, 2000 am., subdiv. (b)(1) ("The rule change . . . signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."); *see also id.*, 2015 am. (noting that discovery that is relevant to existing claims or defenses "may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery").

The Court will not stay this order to allow Hansen to conduct discovery to which she is not otherwise entitled. *See Lindsey v. Parnell Corp. Servs., U.S., Inc.*, No. 17-2016-JTM, 2017 WL 5572614, at *1 (D. Kan. Nov. 20, 2017) (agreeing it is not warranted to delay ruling on a 12(b)(6) motion so that plaintiff can first pursue discovery); *Tarbet v. Miller*, No. 2:05-CV-00635 PGC, 2006 WL 1982747, at *2 (D. Utah July 13, 2006) (noting that nothing in Rule 12 requires the court to allow the plaintiff to conduct discovery before ruling on a 12(b)(6) motion).

IV. **Leave to Amend**

The Court will, however, grant Plaintiff's request for leave to amend. (ECF No. 15 at 8–9.) Pursuant to Rule 15, such leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Particularly, "[i]n dismissing a complaint for failure to state a claim, the court should grant leave to amend freely if it appears at all possible that the plaintiff can correct the defect." *Triplett v. LeFlore Cnty.*, 712 F.2d 444, 446 (10th Cir. 1983) (internal quotations omitted). Conversely, a "district court may refuse to allow amendment if it would be futile." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir.

10

2007). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (quoting *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006)).

At this stage of litigation, the Court does not find that amendment would be futile. The Court dismisses due to a lack of any factual allegations indicating that GMB is required to file its insurance policy with the OCC and that an USIC policy was so filed. It may be unlikely that such facts exist,[9] but the Court does not have before it affirmative evidence they do not. The Court is further cognizant that Hansen's counsel is limited by her obligations under Rule 11 and cannot make such factual allegations without basis. Plaintiff may file an amended complaint within 14 days of this order.

## Conclusion

IT IS THEREFORE ORDERED that *United Specialty Insurance Company's Motion to Dismiss* (ECF No. 7) is GRANTED. Plaintiff Pamela Hansen's claims against United Specialty Insurance Company are DISMISSED WITHOUT PREJUDICE. Plaintiff may file an amended complaint by December 10, 2024.

ORDERED this 26th day of November, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[9] USIC has represented that "GMB is registered in its home state of California under the United Carrier Registration System." (ECF No. 7 at 5.)