IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA HANSEN, | ) |
|     Plaintiff and Counterclaim Defendant, | ) ) ) ) |
| v. | ) ) |
| GMB TRANSPORT, INC., | ) )   Case No. 24-cv-00255-SH |
|     Defendant and Counterclaimant, | ) ) |
| and | ) ) |
| UNITED SPECIALTY INSURANCE COMPANY and GURPREET SINGH, | ) ) ) |
|     Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Defendant GMB Transport, Inc.'s partial motion to dismiss, arguing (1) Plaintiff's negligent hiring, training, and supervision claims are barred by Oklahoma law, and (2) Plaintiff's request for punitive damages should be stricken.[1] As there is no controlling state decision on the matter, this Court predicts the Oklahoma Supreme Court would allow a negligent hiring claim to proceed even where the employer admits vicarious liability, and further finds that Plaintiff has adequately pled a request for punitive damages. The motion will be denied.

**Factual Background**

Taking the factual allegations in the petition (ECF No. 2-1) as true and viewing them in the light most favorable to the nonmoving party, Plaintiff alleges as follows:

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 30.)

1

In October 2021, Plaintiff Pamela Hansen ("Hansen") was driving on the Will Rogers Turnpike (I-44) in Rogers County, Oklahoma, when she exited the highway, parked on the shoulder, and began moving forward on the shoulder with her flashers on. (*Id.* at 1[2] ¶ 1 & 2 ¶¶ 9–10.) Defendant Gurpreet Singh ("Singh") was operating a tractor-trailer as an employee and/or agent of Defendant GMB Transport, Inc. ("GMB"). (*Id.* at 2 ¶ 8 & at 3 ¶ 16.) According to Hansen, GMB and Singh made "reckless choices that directly and indirectly caused permanent, severe, and disabling injuries" to Hansen. (*Id.* at 2 ¶ 13.)

Specifically, Hansen asserts Singh was not paying attention when he slammed into and ran over the back of Hansen's small car, causing damage to the vehicle and injuries to Hansen. (*Id.* at 2 ¶ 11–12.) Singh exercised "improper and unsafe care" by failing to remain attentive to the roadway, failing to pay proper attention to the conditions of the road, and failing to keep a proper lookout. (*Id.* at 3 ¶¶ 18, 20.) Hansen concludes that Singh was a reckless driver by operating his vehicle in a careless or wanton manner without regard to others' safety, and was negligent in not devoting his full time and attention to driving, not maintaining a safe distance while overtaking a vehicle, not driving at a careful and prudent speed, and not driving at an appropriately reduced speed in light of a special hazard. (*Id.* at 4–5 ¶ 25.) Hansen also concludes that GMB violated its duties to train, supervise, and monitor its employees. (*Id.* at 6 ¶¶ 32–34.) Hansen asserts GMB and Singh's actions were reckless and in total disregard of the rights of others, specifically when they knowingly and unsafely acted in violation of various Oklahoma laws and GMB's own policies and procedures. (*Id.* at 7 ¶ 8.)

---

[2] Page numbers refer to those in the court-provided header.

**Procedural Background**

Hansen brought this lawsuit on October 20, 2023, asserting claims of negligence and negligence *per se* against Singh; asserting that GMB is vicariously liable under *respondeat superior* for both claims; and asserting that GMB is directly liable for the negligent hiring, training, and supervision of Singh. (*Id.* at 3–6.) Hansen seeks various forms of compensatory damages, but also requests that "the actions and inactions of Defendants . . . be punished" and that she be awarded punitive damages. (*Id.* at 7.)

In it answer, GMB admits that "Singh was an agent of GMB at the time of the accident" and that "GMB is responsible for the acts of its agent under the doctrine of *respondeat superior* . . . ." (ECF No. 9 at 4 ¶ 16, 5 ¶ 22. 6 ¶ 29.)

GMB moves for partial dismissal, arguing (1) Hansen's direct negligence claims against it are barred by *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289; and (2) Hansen has failed to plead punitive damages as required by Okla. Stat. tit. 12, § 2009(G). (ECF No. 8.) In response, Hansen (1) disputes that her direct negligence claims against GMB should be dismissed, particularly in light of *Fox v. Mize*, 2018 OK 75, 428 P.3d 314, and subsequent lower court decisions, and (2) argues her punitive damages request was sufficiently specific. (ECF No. 21.) Hansen also requests the Court "either deny the Motion or stay the Motion to Dismiss until such time" as the Oklahoma Supreme Court answers the certified question presented in *Richardson v. Sibley*, No. 122,003 (Okla.), which seeks to resolve the very issue raised in GMB's first argument. (*Id.* at 3.)

**Analysis**

**I.    Standard of Review**

A 12(b)(6) motion argues that a plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a plaintiff must

3

plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnotes omitted). "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice*, 861 F.3d at 1104–05.

As this matter is before the Court on diversity jurisdiction, the undersigned applies Oklahoma law to determine the parties' substantive rights. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Generally, when applying state law, the "federal court must follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). Where there is no such controlling decision, this Court must attempt to predict what the highest state court would do and may seek guidance from (1) decisions rendered by the state's lower courts, (2) decisions of federal district courts interpreting the state law in question, and (3) the general weight and trend of authority in the relevant area of law. *Id.* at 666. The Court should consider both "the holdings and considered dicta of the State Courts . . . ." *Colorado Visionary Acad. v. Medtronic, Inc.*, 397 F.3d 867, 871 (10th Cir. 2005) (internal citations omitted).

II.  **A Note on Candor and Persuasion**

Before reaching the merits, a note. The Court is unimpressed with the approach of GMB's counsel toward candor and persuasion in the current briefing. GMB's primary argument is that it could—by an admission in its answer—render Plaintiff's otherwise viable negligent hiring cause of action into an "unnecessary and superfluous" claim that

4

must be dismissed. (ECF No. 8 at 5–6.) GMB bases this argument on an extension of the Oklahoma Supreme Court's ruling in *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289, which has been adopted by some—but not all—lower courts in the years since the decision. *See, e.g.*, *Fox v. Mize*, 2018 OK 75, n.3, 428 P.3d 314, 318 n.3 (collecting cases); *Richardson v. Sibley*, No. 23-CV-00059-JDR-MTS, 2024 WL 709206, at *1–3 (N.D. Okla. Feb. 21, 2024) (collecting cases).

But here is the Court's problem. GMB apparently thought it was appropriate to make this argument <u>without mentioning</u> that the Oklahoma Supreme Court discussed the effect of *Jordan* in detail in the 2018 decision *Fox v. Mize*, found *Jordan*'s implications were not as broad as trucking companies like GMB had previously argued, and stated that "the holding in *Jordan* is limited to its facts." *Fox*, 2018 OK 75, n.12, 428 P.3d at 322 n.12. The Supreme Court's statement in *Fox* was significant enough that both Westlaw and Lexis have flagged *Jordan* as "holding limited by" or "limited by" *Fox*, respectively. To be sure, *Fox* does not foreclose GMB's arguments in this case—the *Fox* court explicitly declined to so rule, albeit while recognizing the "tension" in the case law. *Id.* Perhaps this is not enough to trigger the duty of candor to "disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Okla. Stat. tit. 5, app'x 3-a, Okla. R. Prof'l Conduct 3.3(a)(2); *see also id.* cmt. 4 ("A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities."). Perhaps. But the undersigned is sure of one thing—this is not a good way to persuade a decisionmaker that your interpretation is correct and that you are confident in its correctness. By failing to acknowledge the contrary authority, GMB lost the opportunity to explain why <u>its</u> interpretation was the better one.

The Court will now turn to the parties' arguments.

### III.  Pleading *Respondeat Superior* and Direct Negligence

As noted above, Hansen asserts that Singh is liable both for simple negligence and negligence *per se*.  She further asserts that GMB is liable for Singh's actions under the theory of *respondeat superior* <u>and</u> that GMB is separately liable for its own negligence in hiring, training, and supervising Singh.

In its motion to dismiss, GMB does not develop any argument that Hansen has stated insufficient facts in her petition to state a plausible claim against it for direct negligence.[3]  Instead, GMB points to facts that are not in Hansen's petition, claiming it is "undisputed" that "Singh was acting within the scope of his agency for GMB at the time of the accident."  (ECF No. 8 at 6.)  This apparently referred to GMB's plan to file an answer containing such an admission, as such an answer was filed almost immediately thereafter.[4]  (*See* ECF No. 9 at 4 ¶ 16.)  Relying on an argument derived from the Oklahoma Supreme Court's holding in *Jordan*, GMB then contends that this subsequent admission precludes Hansen from bringing claims for direct negligence.  (ECF No. 8 at

---

[3] While GMB broadly asserts that Hansen has "provided no factual support for her vaguely pled negligent training, hiring, and supervision claim," the entirety of GMB's motion turns on the contention that Hansen "cannot maintain claims for negligent hiring, supervision, or training <u>as a matter of law</u>."  (ECF No. 8 at 2, 6 (emphasis added).)  GMB does not develop any other arguments beyond the aforementioned single, offhand statement, and the Court need not consider it.  *See Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999) (declining to "consider unsupported and undeveloped issues").

[4] Given GMB's reliance on matters outside the petition, it is questionable whether a Rule 12(b)(6) motion is the appropriate vehicle to raise this argument, rather than a Rule 12(c) motion for judgment on the pleadings.  However, a Rule 12(c) motion would be governed by the same general standards as the current motion.  *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).  And neither party objects to the Court considering GMB's arguments on a 12(b)(6) basis.  The Court will, therefore, consider the parties' substantive arguments on dismissal as raised.

5–6.)  Hansen, in response, asserts that *Jordan* is not controlling law, that *Fox* limited *Jordan*'s holding to its facts, and that she can assert both direct negligence claims and claims under a *respondeat superior* theory. (ECF No. 21 at 4–7.)

### A.   *Jordan* and *Fox*

The Oklahoma Supreme Court decided *Jordan* in 1997 on an appeal of a district court's grant of summary judgment.  1997 OK 9, 935 P.2d 289.  In *Jordan*, the plaintiff and a convenience store employee got into an altercation. *Id.* ¶¶ 5–6, at 291.  The plaintiff sued the employee for battery and asserted that the store was liable under the doctrine of *respondeat superior*. *Id.* ¶ 7.  The plaintiff also sued the store for its negligent hiring and retention of the employee. *Id.*  At some point, the store stipulated "that the harm-dealing altercation occurred during the course of [the employee's] employment and that employer would stand liable for damages (including punitive damages) if [the employee] was found guilty of battery." *Id.* ¶ 10, at 292.  Considering this stipulation, the Oklahoma Supreme Court reasoned that "no facts other than those establishing [the employee] committed a battery would be necessary to impose liability" on the employer. *Id.*  Looking at a case deciding a different issue, the Oklahoma Supreme Court drew a distinction between "*vicarious* and *nonvicarious* liability," finding the distinction "suggests that the theory of negligent hiring and retention is available in a nonvicarious liability case or in a case where vicarious liability has not been established." *Id.* ¶ 15, at 293.  Because vicarious liability had been established by stipulation, the court determined "any other theory for imposing liability on the employer [was] unnecessary and superfluous." *Id.* ¶ 16.  The court, therefore, affirmed the trial court's grant of summary judgment to the employer. *Id.* ¶ 22, at 294.

Subsequent to the decision, courts varied in their application of *Jordan*. Some found that negligent entrustment and/or hiring claims could proceed despite a stipulation, while others found they could not. *See Fox*, 2018 OK 75, n.3, 428 P.3d at 318 n.3 (collecting cases). The issue was reignited in 2018, when after two decades, the Oklahoma Supreme Court decided *Fox* and revisited the effect of *Jordan*. 2018 OK 75, 428 P.3d 314.

*Fox* involved a fatal motor vehicle accident between a motorcycle and a tractor-trailer. *Id.* ¶ 1, at 317–18. The plaintiff sued the tractor-trailer driver for negligence and negligence *per se* and asserted *respondeat superior* liability against the trucking company. *Id.* ¶ 2, at 318. The plaintiff also brought direct negligence claims against the trucking company for both negligent entrustment and negligent hiring, training, and retention. *Id.* The trucking company stipulated that the driver was acting in the course and scope of his employment and moved to dismiss all of the direct claims against it, arguing they were "unnecessary, superfluous, and contrary to public policy" after the stipulation—i.e., arguing that *Jordan* controlled. *Id.* ¶¶ 1, 3, at 317–18. The trial court denied the motion to dismiss negligent entrustment, and the trucking company appealed.[5] *Id.* at ¶ 3, at 318. On appeal, the Oklahoma Supreme Court rejected the trucking company's argument that the plaintiff's "negligent entrustment claim was 'legally barred as soon as vicarious responsibility was established.'" *Id.* ¶ 7, at 319.

In coming to this decision, the court made multiple findings that would call into question the entire basis of *Jordan*. For instance, the court noted that Oklahoma law has "long recognized separate causes of action" for *respondeat superior* (grounded in

---

[5] The negligent hiring claim was dismissed by the trial court and was not part of the appeal. *Id.*

8

vicarious liability) and negligent entrustment (based on direct, or "nonvicarious" liability). *Id.* ¶¶ 8–9, at 319–20.

Similarly, the court cited the Restatement (Second) of Agency § 213 (1958), which recognizes direct liability for negligently giving improper or ambiguous orders to an agent, employing improper persons in work involving risk of harm to others, supervising the agent's activities, or permitting or failing to prevent negligent or tortious conduct by third parties on premises or with instrumentalities under the principal's control. *Id.* ¶ 9, at 320. The court found particularly relevant the Restatement's recognition of the principal's liability "both on the ground that he was personally negligent and on the ground that the conduct was within the scope of employment." *Id.* (quoting Rest. (2d) of Agency § 213 cmt. h).

The court also rejected the assertion that the availability of punitive damages for the *respondeat superior* claim meant the plaintiff could not assert additional punitive damages against the employer for the negligent entrustment claim. *Id.* ¶ 11, at 321. Instead, the court noted that such damages for direct negligence turned on "[w]hether the employer's prior knowledge rises to the level of gross negligence," while "punitive or exemplary damages may be assessed against an employer under the doctrine of respondeat superior if *an employee's conduct*" justified such an award. *Id.* Thus, the employer's "exposure to punitive damages could differ significantly" depending on whether the focus was on the agent's conduct or the employer's. *Id.* (internal quotations omitted).

Finally, the court noted longstanding principles of Oklahoma law allowing a plaintiff to "invoke and advance all affordable theories in a single trial" and requiring all

theories of recovery to be submitted to the factfinder if there was proof to support them. *Id.* ¶ 12, at 321–22 (internal quotations omitted). In conclusion, the court noted,

> Employers employing unfit and unqualified drivers cannot insulate themselves from a negligent entrustment claim simply by stipulating that the employee driver was acting in the course and scope of employment. The Plaintiff has the right to determine the facts she will allege and the claims she will pursue. [The trucking company] does not get to make that choice for her by stipulating that its employee was in the course and scope of employment at the time of the accident. The trial court's denial of [the trucking company's] motion to dismiss the negligent entrustment claim is affirmed, and the case is remanded to the trial court for further proceedings consistent with today's pronouncement.

*Id.* ¶ 16, at 323.

Each of the above arguments, if applied in *Jordan*, would have required a different result in that case. However, negligent hiring was not before the Supreme Court in *Fox*, and the *Fox* court decided it "need not determine whether a negligent hiring claim should be treated differently than a negligent entrustment claim." *Id.* ¶ 14, at 322. Instead, it found the "facts in *Jordan* are distinguishable from the case at bar because *Jordan* involved a battery claim against the employee and a negligent hiring claim against the employer." *Id.* Still, the court recognized "the tension in our case law" and quoted a federal case finding it "'difficult to discern a persuasive basis for treating a claim for negligent entrustment differently from a claim for negligent hiring' because both 'presumably rely on the employer's own acts or negligence.'" *Id.* n.12, at 322 n.12 (quoting *Warner v. Miller*, No. CIV-16-0305-HE, 2017 WL 11556453, at *2 (W.D. Okla. Feb. 10, 2017)). Instead, the court took the opportunity "to expressly state that, for now, the holding in *Jordan* is limited to its facts." *Id.*

### B. *Jordan* Is Not Controlling State Law

After *Fox*, multiple courts have addressed the continued viability of *Jordan* and come to different conclusions. *Compare, e.g.*, *Stanley v. Taylor*, No. CIV-23-00877-JD, 2024 WL 4204925, at *5 (W.D. Okla. Sept. 16, 2024) (Dishman, J.) (denying motion to dismiss negligent hiring claims); *Stalnaker v. Three Bros. Transp., LLC*, Case No. 4:20-CV-00140-JED-CDL, ECF No. 30, at 6–9 (N.D. Okla. Jan. 31, 2022) (Tymkovich, J.) (same); *with Jarrell v. Haaji*, No. CIV-23-00037-PRW, 2023 WL 8655869, at *2 (W.D. Okla. Dec. 14, 2023) (Wyrick, J.) (finding *Jordan* controls and dismissing negligent hiring claims); *Schriner v. Gerard*, No. CIV-23-206-D, 2023 WL 3138026, at *2 (W.D. Okla. Apr. 27, 2023) (DeGiusti, J.) (same); *Gregory v. Lindamood Heavy Hauling, Inc.*, No. CIV-22-327-R, 2022 WL 2792203, at *3–5 (W.D. Okla. July 15, 2022) (D. Russell, J.) (same); *Singh v. ABF Freight Sys., Inc.*, No. CIV-19-340-RAW, 2021 WL 4593825, at *3 (E.D. Okla. Oct. 6, 2021) (White, J.) (same); *CTC, Inc. v. Schneider Nat'l Inc.*, No. CIV-20-1235-F, 2021 WL 2295512, at *2 (W.D. Okla. June 4, 2021) (Friot, J.) (same); *Sykes v. Bergerhouse*, No. CIV-20-333-G, 2021 WL 966036, at *3 (W.D. Okla. Mar. 15, 2021) (Goodwin, J.) (same); *Annese v. U.S. Xpress, Inc.*, No. CIV-17-655-C, 2019 WL 1246207, at *3 (W.D. Okla. Mar. 18, 2019) (Cauthron, J.) (same).

Having reviewed the reasoning in these cases, the Court finds *Stanley* and *Stalnaker* to be more persuasive. First, the Court agrees that when the *Fox* court stated, "the holding in *Jordan* is limited to its facts," it was referring to its immediately preceding statement that the "facts in *Jordan* are distinguishable . . . because *Jordan* involved a battery claim against the employee and a negligent hiring claim against the employer." *Compare* 2018 OK 75, n.12, 428 P.3d at 322 n.12, *with id.* ¶ 14. Considering the

11

circumstances, the Court finds *Jordan* is limited to cases involving a battery claim against an employee and a negligent hiring claim against an employer.[6]

### C. Prediction vs. Abeyance

With no controlling state law, if the Court is to address the substance of GMB's arguments, it must attempt to predict how the Oklahoma Supreme Court would rule. *See Wade*, 483 F.3d at 666. Alternatively, the Court could hold GMB's motion in abeyance pending the Oklahoma Supreme Court's ruling on the certified question presented in *Richardson v. Sibley*, i.e.,

> Whether *Jordan v. Cates*, 935 P.2d 289 (Okla. 1997) prevents a plaintiff who asserts both vicarious liability claims and direct negligence claims against an employer—but does not assert an intentional tort claim—from maintaining claims against the employer for negligent hiring, training, retention, or supervision where the employer has stipulated that its employee was acting within the course and scope of employment?

2024 WL 709206, at *4. GMB opposes such a stay. (ECF No. 24 at 1–2.) Further complicating matters, the parties in *Richardson* have settled and have asked the Oklahoma Supreme Court to abate their appeal pending the settlement. *See Jt. Mot. to Abate Appeal Pending Finalization of Settlement*, No. 122,033 (Okla. Sup. Ct. Nov. 27, 2024). With this in mind, the Court declines to abate, as the result would be the same regardless.

---

[6] As one commentator has noted, a court may limit the holding of an earlier opinion to its facts, because the court "comes to view the original opinion with disfavor and curses it to a murky status: rather than explicitly overrule it, the court implicitly overrules it." Jeff Todd, *Undead Precedent: The Curse of A Holding "Limited to Its Facts,"* 40 Tex. Tech L. Rev. 67, 81 (2007). This limitation "begins the process" where, often, "high courts implicitly overrule precedent through a series of decisions that distinguish, ignore, or discredit the precedent until it becomes impotent." *Id.* at 82. The undersigned does not find that *Fox* implicitly overruled the entirety of *Jordan*. However, given the Oklahoma Supreme Court's power to overrule prior precedent and the way the *Fox* court criticized, then limited *Jordan* to its facts, the Court finds the *Fox* court overruled *Jordan* to the extent it could be seen as precedential in cases beyond the specific facts the *Fox* court referenced.

That is because, on the merits, the Court again finds the reasoning of *Stanley* and *Stalnaker* persuasive. As noted above, the *Fox* court's reasoning eviscerates the underpinnings of *Jordan*. Many of the judges who continue to dismiss negligent hiring claims do so because they feel bound by *Jordan* even though it has been "roundly criticized." *See, e.g.*, *Jarrell*, 2023 WL 8655869, at *2 (Wyrick, J.); *Gregory*, 2022 WL 2792203, at *2 & n.1 (D. Russell, J.). Having found that *Fox* limited *Jordan* to its facts—facts that do not apply here—the undersigned is not bound by any such obligation. Instead, the Court must look at the holdings and considered dicta of the state court and may consider other factors such as district court decisions and the weight and trend of authority. The considered dicta in *Fox* strongly indicates that, if asked to rule today, the Oklahoma Supreme Court would rule in Hansen's favor. There is virtually no case law outlining a coherent and persuasive reasoning for extending *Jordan* beyond its facts, and any limited reasoning provided by the *Jordan* case itself is directly contrary to *Fox*. Hansen's position is further in line with the Restatement (Second) of Agency, on which Oklahoma courts have repeatedly relied. *See, e.g.*, *Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶¶ 35, 39, 188 P.3d 158, 169–70, 172 (applying § 213); *see also Fox*, 2018 OK 75, n.8, 428 P.3d at 320 n.8 ("Although this Court has not formally adopted the Restatement, we have cited § 213 with approval on several occasions."). For these reasons—and those stated in *Stanley* and *Stalnaker*—the undersigned predicts the Oklahoma Supreme Court would find that a direct negligent hiring claim against an employer may proceed even where the employer concedes vicarious liability under *respondeat superior*.

The Court will, therefore, deny GMB's motion to dismiss on this basis, without prejudice to a motion to reconsider should the Oklahoma Supreme Court answer the certified question in *Richardson v. Sibley* or otherwise finally resolve the issue.

### IV.     Pleading Punitive Damages

Separately, GMB argues Hansen has "not adequately pleaded punitive damages as to any of her claims" under Okla. Stat. tit. 12, § 2009(G).  (ECF No. 8 at 7.)  GMB acknowledges that punitive damages are not a claim for relief subject to dismissal under Rule 12(b)(6), but it nevertheless asks the Court to strike the request for such damages based on the perceived inadequacy of Hansen's pleading.  (*Id.* at 6–7, 9.)

Under Oklahoma law, punitive damages are recoverable in actions not arising out of contract.  Okla. Stat. tit. 23, § 9.1(A).  Such an award is appropriate when the jury finds by clear and convincing evidence that the defendant acted (1) with a "reckless disregard for the rights of others" or (2) "intentionally and with malice."  *Id.* § 9.1(B)–(C).  Pursuant to Okla. Stat. tit. 12, § 2009(G), punitive damages are "items of special damage[s]" and "their nature shall be specifically stated."  *Id.*  However, in a diversity case, this Court must "apply state substantive law and federal procedural law."  *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017).  Therefore, if the federal rule of civil procedure answers the question, the Court will apply that rule, so long as it does not exceed statutory authorization or Congress's rulemaking power.  *Id.*

Here, Fed. R. Civ. P. 9(g) hits all points.  Rule 9 requires that "[i]f an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).  This "only requires that a plaintiff state that he is seeking punitive damages." *Hinshaw v. Padda*, No. 4:20-CV-474-TCK-SH, 2021 WL 4899109, at *4 (N.D. Okla. Oct. 20, 2021); *see also Rimes v. MVT Servs., LLC*, No. 19-CV-0282-CVE-JFJ, 2019 WL 4120816, at *2 (N.D. Okla. Aug. 29, 2019) ("Because plaintiff 'specifically state[s]' in his complaint that he is seeking punitive damages, the Court finds that it meets the requirements of Fed. R. Civ. P. 9(g).").

14

The parties do not dispute that Hansen has stated claims for negligence, including allegations of reckless driving. And the petition specifically states that Hansen is seeking punitive damages. (ECF No. 2-1 at 7.) It also alleges that Defendants' actions "were reckless and in total disregard of the rights of others" and asserts that Defendants "should be punished to prevent Defendants from repeating the actions, and to be an example to deter others from like conduct." (*Id.*) *See also* Okla. Stat. tit. 23, § 9.1(B)(1) (allowing punitive damages where defendant acted in "reckless disregard for the rights of others"); *id.* § 9.1(A) (noting the jury may award punitive damage "for the sake of example and by way of punishing the defendant"). Hansen has satisfied Rule 9(g), and GMB's motion to strike the request for punitive damages will be denied.

## Conclusion

IT IS THEREFORE ORDERED that *Defendant GMB Transport Inc.'s Partial Motion to Dismiss for Failure to State a Claim* (ECF No. 8) is DENIED.

ORDERED this 4th day of December, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT